**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| CROWLEY PUERTO RICO SERVICES, INC. et al.<br><br>    Plaintiff,<br>            v.<br><br>27 CONTAINERS OF HOTEL FURNITURE AND MATTRESSES, *IN REM* et al.,<br><br>    Defendant. | CIVIL NO. No. 18-1708 (MEL)<br><br>IN ADMIRALITY |

## OPINION AND ORDER

### I.    PROCEDURAL BACKGROUND

Pending before the court is a motion to vacate the arrest of the *in rem* defendant ("the containers") by Furniture Outlet pursuant to Supplemental Admiralty Rule E(4)(f).  ECF No. 34. On September 28, 2018, Crowley Puerto Rico Services, Inc. ("Crowley") filed a motion requesting the issuance of a warrant for the arrest of the containers.  ECF No 5.  On October 5, 2018, U.S. District Judge Francisco A. Besosa granted the motion.  ECF No. 7.  The arrest warrant was issued the same day.  ECF No. 9.  On October 26, 2018, Furniture Outlet filed an emergency motion for a post-arrest hearing pursuant to Supplemental Admiralty Rule E(4)(f).  ECF No. 20.  On October 31, 2018, the motion was granted.  ECF No. 26.  The post-arrest hearing was referred to the undersigned the same day.[1]  Id.  On November 7, 2018, Furniture Outlet filed a motion to vacate the arrest.  ECF No. 34.  The same day, a post-arrest hearing was held.  ECF No. 37.  On November

---

[1] A magistrate judge may conduct a post-arrest hearing and fix an appropriate bond.  See James v. M/V EAGLE EXP., No. CA 12-423-MJ-C, 2012 WL 3068791, at *1 (S.D. Ala. 2012) (citing Taino Lines, Inc. v. M/V Constance Pan Atl., 982 F.2d 20, 22 (1st Cir. 1992) (noting that the magistrate judge, after conducting a post-arrest hearing, ordered the defendants to post security to obtain release of the vessel)).

13, 2018, Crowley filed a response in opposition to the motion to vacate the arrest. ECF No. 41. On December 3, 2018, Furniture Outlet filed a reply to Crowley's opposition. ECF No. 47.

## II.  FACTUAL BACKGROUND

Crowley is a corporation organized and existing under the laws of Delaware with its principal place of business in San Juan, Puerto Rico. Furniture Outlet is a limited liability corporation doing business in Puerto Rico and elsewhere. It is owned by Mohamed Salem. Infinity Investors is a limited liability corporation doing business in Puerto Rico and elsewhere. It is owned by Nael Salem. Nedal Salem ("Mr. Salem"), who is related to Mohamed Salem and Nael Salem, is a "consultant" for Tire Kingdom and an operations manager for both Furniture Outlet and Infinity Investors, LLC.

On November 4, 2015, Tire Kingdom entered into an International and U.S. Domestic Ocean Lines and Logistics Volume Contract ("Service Contract") with Crowley for the ocean carriage of goods. The Service Contract only lists Infinity Investors, LLC as an affiliate of Tire Kingdom.

On July 1, 2017, Infinity Investors, LLC entered into a Credit Agreement with Crowley. Beginning in mid-December 2017, Infinity Investors, LLC shipped 34 containers from San Juan to St. Thomas, U.S. Virgin Islands. However, in early 2018, Sam's Food, a third party, began blocking the entrance to the warehouse that Infinity Investors, LLC was going to use to store the cargo in St. Thomas. Thus, the cargo remained at Crowley's terminal in St. Thomas for months. On June 22, 2018, the Superior Court of the Virgin Islands permanently enjoined Sam's Food from blocking access to the warehouse. Within four weeks, Infinity Investors, LLC had offloaded the containers.

In February 2018, Furniture Outlet booked 57 containers from Crowley, to be loaded with hotel furniture and mattresses from San Juan to St. Thomas. After holding several meetings with Mr. Salem, Crowley agreed to ship 30 containers. On or around July 26, 2018, Crowley shipped 15 containers. On or around August 11, 2018, Crowley shipped 15 more. Then, on September 28, 2018, Crowley filed the motion requesting the issuance of a warrant for the arrest of the remaining 27 containers.

## III.   FURNITURE OUTLET'S ARGUMENTS

A post-arrest hearing is intended to make a preliminary determination whether there were reasonable grounds for issuing the arrest warrant, and if so, to fix an appropriate bond. Salazar v. Atl. Sun, 881 F.2d 73, 79–80 (3d Cir. 1989). "[C]ourts have compared the showing required in a 'reasonable grounds' analysis to the more familiar standard of probable cause." Id. (quoting Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 542 (4th Cir. 2013)). During the hearing, the plaintiff must shoulder the burden of showing why the arrest should not be vacated. James v. M/V EAGLE EXP., No. CA 12-423-MJ-C, 2012 WL 3068791, at *3 (S.D. Ala. 2012).

To demonstrate that Crowley has not met this burden, Furniture Outlet makes two arguments. First, Furniture Outlet argues that unlike Infinity Investors, LLC, it is not an affiliate of Tire Kingdom under the Service Contract. Thus, Crowley cannot enforce a lien over Furniture Outlet's cargo for the alleged demurrage charges owed by Infinity Investors, LLC. Second, Furniture Outlet argues that even assuming it is an affiliate of Tire Kingdom, Crowley cannot enforce a lien over Furniture Outlet's cargo because Infinity Investors, LLC was not at fault for the accrual of the demurrage.

Turning to Furniture Outlet's first argument, it is undisputed that the Service Contract only lists Infinity Investors, LLC as an affiliate of Tire Kingdom.[2] Thus, an examination of the definition of 'affiliate' under the Service Contract is warranted. The Service Contract defines 'affiliate' as "two or more entities, which are under common ownership or control by reason of being parent and subsidiary or entities associated with, under common control with, or otherwise related to each other through common stock ownership or common directors or officers." ECF No. 1-1, at 3. While the status of Furniture Outlet in relation to Tire Kingdom under the Service Contract cannot be definitively determined at this time, there is probable cause to believe that Furniture Outlet is an affiliate of Tire Kingdom for the following three reasons. See 20th Century Fox Film Corp. v. M.V. Ship Agencies, Inc., 992 F. Supp. 1423, 1428 (M.D. Fla. 1997) ("While discovery may illuminate the ownership issue, which cannot definitively be determined at this early stage of the proceedings, considering the facts as proffered, the Court finds the plaintiff has established probable cause and reasonable grounds for the issuance of the writ of attachment.").

First, on November 8, 2016, Inger White instructed Rose Rahm, both Crowley employees, to add Furniture Outlet as an affiliate to Tire Kingdom's contract.[3] ECF No. 43-1. This email is credible because it was sent over one year before the conflict between Crowley and Infinity Investors, LLC arose. Thus, a reasonable inference can be made that Inger White gave this instruction per Furniture Outlet's request. Second, there is evidence that Tire Kingdom and

[2] It should be noted that the Service Contract does list Mr. Salem as an affiliate. Defense Exhibit B. However, it does not follow that Furniture Outlet, for whom Mr. Salem is an operations manager, is an affiliate under the Service Contract. It is unclear whether Mr. Salem's name appears in the Service Contract in his personal capacity as an officer of Tire Kingdom, Infinity Investors, LLC (for whom he also serves as an operations manager), or Furniture Outlet.
[3] Furniture Outlet argues in its reply that under federal maritime law, a party cannot rely on parol evidence to modify the plain terms of an admiralty contract. ECF No. 47, at 6. However, the parole evidence rule is only applicable where evidence of *prior or contemporaneous* agreements are offered to contradict, vary, or subtract from the terms of a writing. OT Africa Line Ltd. v. First Class Shipping Corp., 124 F. Supp. 2d 817, 821 (S.D.N.Y. 2000). The email from Inger White to Rose Rahm was not sent prior to or contemporaneous with the formation of the Service Contract between Crowley and Tire Kingdom. Thus, it does not constitute parol evidence.

Furniture Outlet have a common employee: Mr. Salem. Mr. Salem is a "consultant" for Tire Kingdom, for whom he negotiates contracts and handles logistics, and an operations manager for Furniture Outlet.[4] Third, Crowley afforded Furniture Outlet the same preferential rate as Infinity Investors, LLC. Crowley claims that it would be fined for affording Furniture Outlet a preferential rate if it was not an affiliate of Tire Kingdom. While Crowley does not cite to any laws or regulations supporting this claim, the fact that it afforded Furniture Outlet a preferential rate similar to that enjoyed by Tire Kingdom supports the notion that Furniture Outlet is an affiliate of Tire Kingdom. Furniture Outlet's explanation that it was afforded a preferential rate because "people make mistakes" is unconvincing.[5] Charging the wrong rate for a single chair, sofa, or bed might be a mistake. The odds of charging the wrong rate by mistake on 57 containers full of furniture, though, seems less likely among sophisticated and experienced players in the shipping industry.

Because there is probable cause to believe that like Infinity Investors, LLC, Furniture Outlet is an affiliate of Tire Kingdom, Crowley can enforce a lien over Furniture Outlet's cargo for the alleged demurrage charges owed by Infinity Investors, LLC. This is due to the fact that the Service Contract states that "[t]he Shipper accepts such covenants, exceptions, limitations and liberties of this Contract on its own behalf and on behalf of any Affiliates, the consignee or owner or beneficial owner of the Goods and Shipper warrants to Carrier that Shipper has the authority to bind the Consignee or owner of the Goods to such extent."[6] ECF No. 1-1, at 3.

---

[4] During the post-arrest hearing, Mr. Salem was not candid regarding his relationship to Tire Kingdom. First, he testified that he was "not the operations manager" of Tire Kingdom. Next, he specified that he was a "consultant" for Tire Kingdom. Finally, he admitted that he was an employee of Tire Kingdom. Such evasiveness casts doubt on Mr. Salem's credibility as a witness.

[5] Mr. Salem testified that Furniture Outlet does not ship cargo under the same terms and conditions as Tire Kingdom. Defense counsel stated that it is unknown whether Furniture Outlet enjoyed the terms and conditions of the Service Contract. However, defense counsel later stated that Furniture Outlet was afforded a preferential rate because "people make mistakes." Such shifting explanations cast doubt on the tenability of Defendant's position.

[6] Furniture Outlet does not contest that this language suggests that Crowley can enforce a lien over Furniture Outlet's cargo for the alleged demurrage charges owed by Infinity Investors, LLC if Furniture Outlet is an affiliate of Tire Kingdom.

Even assuming that it is an affiliate of Tire Kingdom, Furniture Outlet contends, Crowley still cannot enforce a lien over the containers. Crowley Tariff Rule 34 states that "[d]emurrage charges will not be applied if through no fault of Shipper the Equipment remains at Carrier's Facility after Published sail date or expiration of free time." Defense Exhibit F. Here, Sam's Food blocked the entrance to the warehouse that Infinity Investors, LLC was going to use to store its cargo in St. Thomas, resulting in the accrual of demurrage. Thus, the argument goes, Infinity Investors, LLC was not at fault for the accrual.

Furniture Outlet's interpretation of Crowley Tariff Rule 34, however, incorrectly assumes that the only option that Infinity Investors, LLC had prior to the issuance of the injunction against Sam's Food was to leave the merchandise at Crowley's facilities. Crowley cannot be expected to provide approximately six months' worth of free storage to Infinity Investors, LLC due to the misdeeds of a third party. Instead of leaving the cargo to languish at Crowley's terminal in St. Thomas, Infinity Investors, LLC could have found alternative storage for the cargo and, if necessary, presented a legal claim against Sam's Food for damages.

For the foregoing reasons, the pending motion to vacate the arrest (ECF No. 34) is DENIED. In order to obtain the release of the 27 containers, Furniture Outlet must pay a bond of $339,920.53.[7]

IT IS SO ORDERED

In San Juan, Puerto Rico, this 4th day of December, 2018.

s/Marcos E. López
U.S. Magistrate Judge

---

[7] The outstanding demurrage charges for the 57 containers and chassis booked by Furniture Outlet amount to $717,610.00. $717,610 divided by 57 is $12,589.65. $12,589.65 multiplied by 27, the number of containers under arrest, is $339,920.53. The live testimony at the post-arrest hearing established that there were no significant problems with the shipment of the 30 containers not under arrest. Thus, the outstanding demurrage charges for those 30 containers have not been included as part of the calculation of bond.